IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

One (1) U.S. (TRW) 7.62mm M-14
NATIONAL MATCH Rifle Serial No. 1454316
William E. Biggs (pro se)
Party in Interest
211 Runway Ln
Temple, Texas 76504
(254)541-2869 or (254)541-2800
webacraft@msn.com
Plaintiff (pro se)

:

FILED
November 21, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____CV_____
DEPUTY

VS.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES and
STEVEN M. DETTELBACH AS THE
DIRECTOR OF ATF,
99 New York Avenue NE, Washington, D.C. 20226;
UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW, Washington, D.C. 20530
Defendants

Jury trial is not demanded.

Alternative Dispute Resolution is welcomed.

This suit will be in two sections. I- Pre- *New York State Rifle & Pistol Assn., et al. V Bruen* and

II-Post- *New York State Rifle & Pistol Assn., et al .V Bruen*

## *I- Pre- New York State Rifle & Pistol Assn., et al .V Bruen*

1.JURISDICTION

( I will refer to all branches of the BATFE as "ATF")

On September 9, 2021 ATF confiscated One (1) U.S. (TRW) 7.62mm M-14 NATIONAL MATCH Rifle Serial No.1454316 ("*M14NM*") from me citing 18 U.S.C. § 922(o) which prohibits the possession of machineguns unless they were lawfully possessed prior to May 19, 1986. As this is a purported violation of federal law, this court holds jurisdiction.

2. NATURE of SUIT.

This suit is brought to force the ATF to return "*M14NM*" to my possession and to add it by serial number to the Curio and Relic list to prevent any future doubt as to its status with ATF and separately to declare the National Firearms Act of 1934 facially unconstitutional, or, in the alternative, unconstitutional as applied to this case, and for any further relief that this Court deems just and proper.

3. ORIGIN

This is original proceeding. Attempts have been made for over a year to find a resolution, even enlisting the aid of Senator John Cornyn and Congressman John Carter but to no avail.

4. STATEMENT OF FACTS

a) I am a retired Vietnam veteran living off social security and veteran's benefits, filing pro se. I pray the court will bear with my ineptitude.

b) My Dad was career military, a D-Day Hero, senior NCO, Expert rifleman closely affiliated with the Ft. Hood marksmanship team, and retired at Ft. Hood, Tx. (See William E. Biggs document package EXHIBIT A) Dad was the non-commissioned officer in charge (NCOIC) senior supply specialist for the CMMI(CMRI) team in the five-state area surrounding Ft. Hood Texas in the 1960s. Dad was the classic army "scrounger". Dad got this M14NM and others in the late 1960s or early 1970s after the army adopted the M16 and started destroying M14s. He got them thru his marksmanship team affiliation and regulation AR920-25. (EXHIBIT B) AR920-25 clearly states that the army consulted with The Director of Alcohol and Tobacco Tax Division of the U.S. Treasury Department, the forerunner of ATF and got a determination that a *M14NM* would not be a "firearm as defined in section 5848".( EXHIBIT C) Therefore, when there was an "amnesty" period to register all machine guns, the *M14NM* was considered a semi-automatic and there was no reason to register it. This *M14NM* was electro-penciled M21 on the heel and was a Vietnam era sniper rifle, It is one of the rarest of rare M14NM rifles and a real museum piece. The scope was not with it, I think because it was used by the Army marksmanship team just after Vietnam. Dad died in the late 1970s and at some time gave the M*14NM* to my brother David in Killeen, Tx.

David sold me the TRW *M14NM* in early 2021. He had tried to pawn the rifle and they would not take it. David was in poor health and contracted covid later in 2021 and died.

c) I contacted Mr. Damon Wright at the NFA branch ATF by email on May 19 last year and notified him that I had the *M14NM* because the controversy around the legality of m14 rifles on the internet, and my brother's inability to pawn the M14NM. I had previously been in contact with Mr. Wright about re-activating WWII machine guns from "parts kits" readily available on the internet. He advised me that it would be ok if I had a 07 FFL but only for sale to Law Enforcement. I went ahead and applied for my 07 FFL. Things rocked along and four months later on Saturday 8/21 I sent him an e mail that I had been issued my 07 FFL and had sent a check for my SOT (Special Occupational Tax) to manufacture machineguns and pay a once a year tax.

d) Monday 8/23 I got this reply:

"Good morning Mr. Biggs. I apologize for the late reply. I have received information back from our Firearms and Technology Division (FATD) regarding your M14NM. The TRW M14 NM in question is a "machinegun" and "firearm" under the NFA. As you did not manufacture the firearm while possessing an 07 FFL with current SOT, under 18 U.S.C. 922(o) it is contraband. It is FATD's view that this is a "machinegun" because it is readily restorable.

In *U.S. v. One Harrington, 378 F.3d at 534*, *the Sixth Circuit found that the ATF's analysis was thorough, its reasoning valid, and its decision consistent with earlier pronouncements; therefore, it found that the classification of the receiver was not arbitrary, capricious or an abuse of discretion. Similarly, in U. S. v. One TRW Model M14, 294 F.Supp.2d at 901-902, the district court concluded that the ATF's classifications were to be reviewed under an arbitrary and capricious or abuse of discretion standard, and that the ATF's classification of the M-14 as a "machinegun" had not been shown to be arbitrary. Likewise, in U.S. v. One TRW U.S. Rife Model 14, no. CV-02-264-TUC-RCC, (D.Az. 2004) (unpublished), the district court applied the arbitrary and capricious standard to the ATF's classification of the M-14 receiver as a "machinegun" and concluded that it did not abuse its discretion in making that determination.*

Firearms not lawfully registered as required by the NFA may not be registered and legitimized by their possessors. They are contraband and unlawful to possess. You can make arrangements with your local ATF office to dispose of the item."

e) (You will note further down in this email where I highlighted 18 USC 922(o) and how it did not apply)

f) You will note that the *M-14* in his email is in BOLD type- his, not mine.

Since he indicated that I had not "As you did not manufacture the firearm while possessing an 07 FFL with current SOT, under 18 U.S.C. 922(o) it is contraband"

I went ahead and filed an ATF form 5320.2 "form 2" Firearm Manufactured or Imported on the M14NM and it was **APPROVED** on 9/15/2021. (EXHIBIT D) When I notified Mr. Wright, I got an immediate email **DISAPPROVING** the registration.

g) I voluntarily surrendered the *M14NM* on 9/9/2021 to Stephanie A. Roman and another very professional young ATF special agent. Ms. Roman's comment on meeting me was "here I thought we were going to confiscate a submachine gun from a dirt bag and instead we are taking a deer rifle from a grandfather"

h) I attempted to get the *M14NM* back and was not successful. I contacted Senator John Cornyn's office and they were also not successful. In the reply from Assistant Director Daniel L. Board Jr. of the ATF (EXHIBIT E) *Mr. Board makes numerous misleading statements.* He cites numerous lawsuits (which today would not pass the scrutiny of *Bruen*) where ATF prevailed over "M14NM" rifles. These rifles were all M14 battle rifles, most of which had been destroyed, sold as scrap, re-welded and resold. As explained further in my statement, my *M14NM* is a completely differently rifle, made under a different contract and carrying a different military stock number (see AR920-25 and quote from Lee Emerson's book later in this statement) *Mr. Broad also states*, "Although Mr. Biggs provided a 1980 case in which one court permitted an individual to retain an M14NM, that case is not applicable here." He refers to the Sauerman case and I feel it has every relevance. If you will read the judges brief from the lawsuit, (EXHIBIT F) the judge <u>never</u> refers to the rifle in question as an M14 in fact he always references it as the "*NM*" He also makes a very clear the distinction between a M14 and an *M14NM* in the brief.

i) *Mr. Broad goes on*:

"Based on its design, the M14 Service Rifle was first classified as a machinegun under the NFA in 1958. See Revenue Ruling 58-417. Army Regulation 920-25, dated February 8, 1965, sets out the modifications made to the standard M-14 to create M14M and M14NM (national match) weapons, including the TRW-M14. It states that:

The U.S. Rifle, caliber 7.62mm, M14M (modified), will be basically the M14 Service Rifle with the exception of welding operations performed on the selector shaft lock, the selector shaft lock-retaining pin, the selector shaft, the receiver and the sear release...The foregoing 5 point weldment will render the rifles incapable of full automatic fire since the selector may no longer be assembled thereto.

As is clear from this description, the purpose of the welding operations is to create semiautomatic functioning without changing the original design of the machinegun or, alternatively, requiring the design and manufacture of a semiautomatic weapon. The fact that the welding operations were necessary to modify the function of the weapons proves that the M14M and M14NM were designed as machineguns." *<u>You will note in the letter from TRW, (EXHIBIT G) it is stated that "all M14 National Match rifles that were manufactured by us, were designed by the U. S. Government and were manufactured and intended for use in a semi-automatic mode only"</u>*

j) *Mr. Broad is again incorrect.* **MAJOR POINT OF CONTENTION "READILY RESTORED"** The ATF contends that in 1968 the Gun Control Act changed the definition of a machinegun to include the term "readily restored". As the Judge in the mentioned lawsuit clearly stated, the TRW M14NM was never a machine gun. The technical fact is that the welding of the selector causes a defect in the heat treatment of the receiver of a weapon and a M14 CONVERTED to M14NM must have the receiver re-heat treated after welding to maintain the integrity and accuracy of the resultant rifle. TRW built my rifle from scratch under the 1964 DCM contract and welded the receiver BEFORE it was heat treated and therefore as stated in the letter from TRW (EXHIBIT G) the rifle was never a "machine gun" it was semi-automatic only from birth. Something cannot be "restored" to a state it never was. AR920-25, *quoted by Mr. Broad* , also stated that the *M14NM* was a non- machine gun as determined by the Director of Alcohol and Tobacco Tax Division of the U.S. Treasury Department under 1954 Internal Revenue code 5848 1. & 2. (EXHIBIT C), The *M14NM* was manufactured by TRW under a special Department of Civilian Marksmanship contract in 1964 as a target rifle and has an entirely different stock number than the standard M14 combat rifle. " The *competition match* M14 rifle was designated *M14NM*. TRW made *M14NM* rifles from scratch.*M14NM* rifles received the same welding operation as the M14 M rifles. TRW manufactured 4,874 new *M14NM* rifles in 1964."

**M14 Rifle History**

**and Development**

Sixth Edition

Lee Emerson page 138

Used with personal permission

Copyright 2009 - 2020 by Lee Emerson

## *The ATF has over the years been very inconsistent on its interpretation of M14 rifles:*

k) "**Hahn Machine Company and Pearl Manufacturing**

From at least 1990 until 1995 or later, Hahn Machine Company (St. Charles, MO) legally manufactured semi-automatic only M14 rifles by cutting and welding pieces from scrapped USGI M14 receivers. This was done according to a letter of approval signed by then BATF Chief, Firearms Technology Branch, Edward M. Owen, Jr. dated June 8, 1994. The letter was addressed to Mr. Lloyd Hahn of the Hahn Machine Company in St. Charles, MO. It was the BATF response to Mr. Hahn's May 11, 1994 submission of a modified USGI TRW M14 receiver for a BATF ruling on the assembly of a semi-automatic only USGI M14 receiver. The approval letter granted permission to manufacture semiautomatic only M14 receivers from "properly destroyed" USGI M14 receivers. The destruction procedure first required a specific torch cut procedure on the receiver followed by removal of the selector lug and weld fill in of the operating rod rail cuts. After these steps were completed, the pieces of receiver scrap could be welded into one piece. The letter also required Hahn Machine Company to permanently engrave the company name, city and state on the receiver.

 A second letter from the BATF dated March 22,1995 and signed by Technical Section ATF Specialist Naomi L. Rubarts was the cover document for an approved Application for Registration for Tax-Free Transactions as a manufacturer.

The following is presented strictly for providing the reader with a historical perspective regarding civilian ownership of M14 type rifles in the United States. The June 8, 1994 BATF letter to Lloyd Hahn was consistent with a previous letter mailed to Martin Pearl of Grants, New Mexico dated August 21, 1980. In the letter to Mr. Pearl, Edward M. Owen, Jr. stated that the "manufacturing of firearms from properly destroyed (demilitarized) firearm receivers is an acceptable practice" as long as "the first stage of your manufacturing process be the removal of the selector pivot housing" and this "modification will remove the new receivers from the provision of the National Firearms

Act." As an aside, Martin Pearl (SOT/FFL Pearl Manufacturing) went on to register and convert thirty-two Maadi AKM and two Valmet M78 rifles to select fire capability. He did these conversions for the 1984 film classic, Red Dawn."

Lee Emerson page 165-166

Used with personal permission

**M14 Rifle History**

**and Development**

Sixth Edition

Lee Emerson

Copyright 2009 - 2020 by Lee Emerson

l) There have been a few confiscations of TRW M14 **COMBAT** rifles in the past but mine is a _M14NM_ and is unique. It is only 700 serial numbers from the one in the Sauerman lawsuit and was made under the same 1964 contract.

Also, I believe there is no doubt that my rifle was legal for my father to own under AR920-25 as a non- machine gun as determined by the Director of Alcohol and Tobacco Tax Division of the U.S. Treasury Department, should have been "Grandfathered", and should be legal for me to own.

I hold both a 03 Curio & Relic Federal Firearms license and a 07 Manufacturers Federal Firearms license.

m) The back of the ATF Curio and Relic Handbook (EXHIBIT H) lists hundreds of machineguns that are legal for a 03 C&R holder to own, buy and sell.

n) My 07 FFL makes it legal for me to manufacture machineguns for sale or demonstration to law enforcement.

o) ATF has horrible concerns about my being in possession of a possible full auto M14. I own a M1A, the civilian version of the M14 battle rifle. I can convert that rifle to select fire full automatic faster than ATF specialists could convert a M14NM to select fire.

p) I have absolutely no intention of ever converting this TRW _M14NM_ to full automatic. Its historic value lies in its original state.

q) ATF does not have the authority to add firearms to the NFA registry. BUT it does have the authority to add weapons to the Curio and Relic list (EXHIBIT K )

r) My desire is to have this TRW *M14NM* declared a Curio and Relic by ATF **To be recognized as C&R items, firearms must fall within one of the following categories:**

1. Firearms which were manufactured at least 50 years prior to the current date, but not including replicas of such firearms.
2. Firearms which are certified by the curator of a municipal, state, or federal museum which exhibits firearms to be curios or relics of museum interest; and
3. Any other firearms which derive a substantial part of their monetary value from the fact that they are novel, rare, bizarre, or because of their association with some historical figure, period, or event.

s) The following U.S. Code makes clear that firearms "lawfully received" to engage in "competitions" (target shooting) are exempt from the provisions of 922(o)

"18 U.S.C. § 925 - U.S. Code - Unannotated Title 18. Crimes and Criminal Procedure § 925. Exceptions: Relief from disabilities

(a)(1)  The provisions of this chapter, except for sections 922(d)(9) and 922(g)(9) and provisions relating to firearms subject to the prohibitions of section 922(p) , shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

(2)  The provisions of this chapter, except for provisions relating to firearms subject to the prohibitions of section 922 (p) shall not apply with respect to (A) the shipment or receipt of firearms or ammunition when sold or issued by the Secretary of the Army pursuant to section 4308 of title 10 before the repeal of such section by section 1624(a) of the Corporation for the Promotion of Rifle Practice and Firearms Safety Act, and (B) the transportation of any such firearm or ammunition carried out to enable a person, who lawfully received such firearm or ammunition from the Secretary of the Army, to engage in military training or in competitions (AR920-25)

**Law ATF used to confiscate Dad's rifle:**

922(o)

(o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun. (2) This subsection does not apply with respect to— (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or (B) any lawful transfer or lawful possession of a machinegun that was *lawfully possessed* before the date this subsection takes effect.

**Under AR920-25, the M14NM was "lawfully** *possessed before the date this subsection takes effect*"

u) *922(p)

(p)(1) It shall be unlawful for any person to manufacture, import, sell, ship, deliver, possess, transfer, or receive any firearm— (A) that, after removal of grips, stocks, and magazines, is not as detectable as the Security Exemplar, by walk-through metal detectors calibrated and operated to detect the Security Exemplar; or (B) any major component of which, when subjected to inspection by the types of x-ray machines commonly used at airports, does not generate an image that accurately depicts the shape of the component. Barium sulfate or other compounds may be used in the fabrication of the component. At the very bottom of this regulation when searched on the internet, you will see that current CFRs still reference AR920-25 (PART 623 - LOAN OF ARMY MATERIEL Authority: 10 U.S.C. 2571; 31 U.S.C. 686; 10 U.S.C. 2667.)

v) (EXHIBIT L) is a copy of "the National Guardsman" Volume 19, 1965 advising members of the availability of M14NM rifles to civilians under AR920-25

w) AR 920-25 describes the *M14NM* as being "refined to effect match TARGET quality"

    Please read the first paragraph of the 1968 GCA "purpose"


"Gun Control Act of 1968".

TITLE I—STATE FIREARMS CONTROL ASSISTANCE

PURPOSE

SEC. 101. The Congress hereby declares that the purpose of this title is to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence, and it is not the

purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of

hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding

citizens for lawful purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this

title.


x) Now the 1986 Firearms Owners Protection Act:


(I contend that as the owner of this M14NM my every "right as a citizen" from (A) to (D), has failed to be "Protected" and has in fact been violated by the ATF)


PUBLIC LAW 99-308—MAY 19, 1986 100 STAT. 449

Public Law 99-308

99th Congress

An Act Firearms Owners' Protection Act.

To amend chapter 44 (relating to firearms) of title 18, United States Code, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

SECTION 1. SHORT TITLE AND CONGRESSIONAL FINDINGS.

 (a) SHORT TITLE.—This Act may be cited as the "Firearms Owners' Protection Act".

 (b) CONGRESSIONAL FINDINGS.—The Congress finds that—

 (1) the rights of citizens—

  (A) to keep and bear arms under the second amendment

   to the United States Constitution;

    (B) to security against illegal and unreasonable searches and seizures under the fourth amendment;

    (C) against uncompensated taking of property, double jeopardy, and assurance of due process of law under the fifth amendment; and

    (D) against unconstitutional exercise of authority under the ninth and tenth amendments;

    require additional legislation to correct existing firearms statutes and enforcement policies; and

(2) additional legislation is required to reaffirm the intent of the Congress, as expressed in section 101 of the Gun Control Act of 1968, that "it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law abiding citizens for lawful purposes.".

The M14NM was specifically designed and manufactured as a target rifle for marksmanship training.

y) I believe that the court should apply the "**rule of lenity**", also called the **rule of strict construction**, a principle of criminal statutory interpretation that requires a court to apply any unclear or ambiguous law in the manner that is most favorable to the citizen as opposed to the federal agency. The rule has a long history in the law and has been an important element of the relationship between the courts and the legislature.

z) As recently as March 7, 2022 in Wooden V. United States, Justice Gorsuch in his opinion reiterated that the "rule of lenity" was alive and well in the minds of the Supreme Court

## *II-Post- New York State Rifle & Pistol Assn., et al .V Bruen*

### I. THE SUPREME COURT'S LANDMARK *BRUEN* DECISION FUNDAMENTALLY CHANGES THE INSTANT MATTER

#### a. THE *BRUEN* DECISION AND ITS LEGAL STANDARD

a1) *Bruen* held as unconstitutional New York's 1911 Sullivan Act, requiring a license and demonstration of "proper cause" for the possession and carrying of a concealable firearm. *Bruen*, 597 U.S. at *2. What makes *Bruen* Particularly germane to the instant matter is the announcement of a clear legal standard for the evaluation of acts regulating the peaceable keeping and bearing of arms. *Bruen* identified the Court of Appeals "coalesce[ing] around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-ends scrutiny", the Court correctly identified this as "one step too many[.]" *Id.* *9-10. Those previous decisions at the various Courts of Appeal manifested deference to the Government in a manner unlike any other fundamental right, and the inexplicable consideration of regulations clearly contemplating the keeping and bearing of arms as beyond the scope of the Second Amendment. *Id.* *14 (reading case law to "necessarily reject[]" intermediate scrutiny in the Second Amendment context, further positing that a "constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.") (quoting *Heller v. District of Colombia*, 554 U.S. 570 at 634(2008)).

b1) Finally, though, we have a standard which clearly articulates the burdens in a case involving restrictions on the right to keep and bear arms. It is, as artfully penned by the Court, "when the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct. The Government **must *then*** justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation. **Only then** may a court conclude that the individual' conduct falls outside the Second Amendments 'Unqualified command.'"

To summarize: any law, regulation, or government policy affecting the "right of the

people to keep and bear arms," U.S. CONST., Amend. II, can **only** be constitutional if the Government demonstrates analogous restrictions deeply rooted in American history evinced by historical materials contemporaneous with the adoption of the Bill of Rightsin 1791. *Bruen*, 597

U.S. at *29.

### b. THE STATUTES HERE AT ISSUE AFFECT CONDUCT COVERED BYTHE SECOND AMENDMENT'S "UNQUALIFIED COMMAND"

c1) The ATF confiscated the M14NM claiming 18 U.S.C. § 925- U.S. Code - Unannotated Title 18. Crimes and Criminal Procedure § 925, section 922(o)

"Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun. (2) This subsection does not apply with respect to— (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect."

Mr. Board also referred to the NFA of 1934 "The TRW M14 NM in question is a "machinegun" and "firearm" under the NFA"

d1) The charged statutes deal with the taxation and transfer of machineguns, and other weapons. The Government alleges the M14NM meeting specifications of AR920-25 to be a machinegun. What's more, actions subsequent to the passage of the charged firearm statutes render it impossible to comply with the taxing provisions, thus leaving the statutes a bizarre, vestigial area of law passed pursuant to the taxing power which—in dubious constitutionality—is used by the Government as an independent effective prohibition on the sale, transfer, or possession of any controlled devices not registered by 1986.

e1) The Government may attempt to argue that machineguns are beyond the scope of the Second Amendment by attempting to characterize them as "dangerous and unusual," as it has in other cases, but this is not the test. The court's invocation of "dangerous and unusual" weapons in *Heller* and subsequently *Bruen* was for the purpose of discussion of what *might be* a constitutionally acceptable law, rather than the endorsement of any particular extant policy. *Bruen*, 597 U.S. at *12 (Clarifying that the Court was not undertaking "an exhaustive historical analysis…of the full scope of the Second Amendment") (quoting *Heller*, 554 U.S.

at 627). Rather, the only way a court may conclude the plaintiff and the M14NM meeting specifications of AR920-25 falls outside the scope of the Second Amendment's unqualified command remains clear: the Government must prove the particular regime in question is consistent with the history and tradition of the United States. *Id* at *15. Furthermore, the question of whether a weapon is "in common use at the time," necessarily pins the analysis to the time *before the prohibition*. To consider otherwise would incentivize the Government to legislate wantonly and aggressively, seizing arms, then later evade constitutional scrutiny by suggesting that the arms cannot be in common use, because the Government prohibited them. Such circular logic would be inconsistent with any fundamental rights jurisprudence. Thus, the Government has the burden to prove that the regime in question is consistent with the history and tradition of firearms regulation in this country around the founding era.(1791)

### c. THE LAWS HERE AT ISSUE ARE FACIALLY UNCONSTITUTIONAL UNDER *BRUEN*

f1) It is no great secret that no federal regulation of firearms existed before the enactment of the laws here at issue. In addition to the previously raised Constitutional questions, nothing in the applicable history and tradition of the United States supports the categorical ban of machineguns. The Government alleges that my M14NM meeting AR 920-25 might possibly, with transformative labor, one day become a machinegun. Further, the ATF's decision that the M14NM meeting the specifications of AR920-25 (***NOT*** the M14 Service Rifle, first classified as a machinegun under the NFA of 1934 in 1958. See Revenue Ruling 58-417, a different class of rifle with a different military stock number)—was a machinegun came completely by administrative fiat, absent even notice and comment. Our Nation's history and tradition does not, and cannot, support a finding that My M14NM meeting the requirements of AR920-25 is a machinegun merely because an unelected bureaucrat unilaterally willed it to be. To hold otherwise would be to grant the Bureau more power than Congress could have ever granted it and make innumerable items potentially illegal. *See Bruen*, 597 U.S. at *19-20 ("Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearms regulation requires a determination of whether the two regulations are "relatively similar." . ."Even though the Second Amendment 'definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense. "As *Bruen* explained, historical

analogues to a regulation can be helpful, but plaintiff here proffers more modern evidence that a categorical ban on machineguns, as the Government here seeks to enforce, would be unconstitutional. We present the testimony of then-Attorney General Cummings at a 1934 hearing on the National Firearms Act.

> g1) MR. LEWIS: I hope the courts will find no doubt on a subject like this, General; but I was curious to know how we escaped that provision in the Constitution.
>
> ATTORNEY GENERAL CUMMINGS: Oh, we do not attempt to escape it. We are dealing with another power, namely, the power of taxation, and of regulation under the interstate commerce clause. You see, if we
>
> made a statute absolutely forbidding any human being to have a
>
> machine gun, you might say there is some constitutional question
>
> involved. *But* when you say, "We will tax the machine gun" and when you say that "the absence of a license showing payment of the tax has been made indicates that a crime has been perpetrated", you are easily within the law.
>
> MR. LEWIS: In other words, it does not amount to prohibition, but allows of regulation
>
> ATTORNEY GENERAL CUMMINGS: That is the idea. We have studied that very carefully.

National Firearms Act: Hearings before the Committee on Ways and Means, House of Representatives on H.R. 9066, 73 Cong. 2d Sess. (1934). Defendant posits that the then-Attorney General, advancing the very law whose constitutionality was even then dubious, admitting that a categorical ban on machineguns would present constitutional problems, is instructive that there is no historical basis for the current regime—essentially reflecting what Mr. Cummings describes as problematic—consistent with the Second Amendment.

### d. THE LAWS HERE AT ISSUE ARE UNCONSTITUTIONAL AS APPLIED TO PLAINTIFF'S OWNERSHIP OF M14NM UNDER *BRUEN*

h1) In the alternative to that advanced above, the application is unconstitutional as it applies to ***PLAINTIFF'S OWNERSHIP OF M14NM***. Even if the Government could somehow prove to the Court that the wholesale felonization of the peaceable possession of an entire category of arms to

be consistent, this case presents something far more peculiar: an administrative agency's unilateral declaration that a formally declared legal firearm is now illegal. There can be no historical justification, consistent with the "unqualified command" of the Second Amendment, plus the clear metes of the First, that could justify such a prosecution. Should any exist, the Government bears the burden to prove it. *Bruen* at *15 ("Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"); *id.* at *20 "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." (Quoting *McDonald v. Chicago*, 561 U.S. 742 at 767 (2010)).

## II CONCLUSION

The command of the Second Amendment is clear. Under *Bruen*, consistent with the text of the Constitution and the history and tradition of our Great Nation, it stands to reason that any regulation affecting the peaceable possession of arms warrants meaningful review. The underlying laws have evaded meaningful scrutiny despite being unprecedented in their severity The standard announced in *Bruen* gives this Court the tools it needs to do so.

I believe the Court will agree that the ATF contentions, voiced earlier by Mr. Board, will not stand the scrutiny of the "post Bruen" legal world.

PRAYER

I pray the Honorable Court to find that my facts are true, and the defendants be instructed to return the One (1) U.S. (TRW) 7.62mm M-14 NATIONAL MATCH Rifle Serial No. 1454316 to plaintiff at 211 Runway Ln, Temple, Texas 76504 and to add it specifically to the ATF curio and relic list as:

U.S. Rifle Model M21, Vietnam Era sniper rifle, mfd. by TRW, cal. 7.62MM M14NM s/n 1454316 meeting specifications of AR920-25

And separately Plaintiff William E Biggs respectfully moves this Honorable Court to declare the

National Firearms Act of 1934 facially unconstitutional, or, in the alternative, unconstitutional as applied to this case, and for any further relief that this Honorable Court deems just and proper, including the unconstitutionality of the Hughes Amendment to the "Firearms Owners Protection Act of 1986"

Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying , or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11/21/2022

Signature of Plaintiff _William E. Biggs_
Printed Name of Plaintiff William E. Biggs

CERTIFICATE OF SERVICE   I William E Biggs, hereby certify that I have on this day, caused the foregoing document or pleading to be filed with this Court's CM/ECF system, which caused a notice of the filing and a true and correct copy of the same to be delivered to all counsel of record.

Dated: 11/21/2022